## 2142. WIMBUSH v. CURRY.

The justice of the peace did not err in dismissing the suit. The account attached to the summons was upon its face barred by the statute of limitations; and it was not verified by the affidavit of the plaintiff, so as to require the court to continue the case until the next term of the court. The judge of the superior court erred in sustaining the certiorari.

(a) In the absence of a contract to the contrary, the landlord's right to collect his part of the crop, as well as to demand payment for any supplies furnished by him to aid in making the crop, accrues upon the maturity of the crop, and is not postponed until the end of the year.

DECIDED SEPTEMBER 20, 1910.

Certiorari; from Butts superior court—Judge Reagan. August 19, 1909.

*J. T. Moore, Y. A. Wright,* for plaintiff in error.

*C. L. Redman,* contra.

RUSSELL, J. The defendant in error brought suit in a justice's court against the plaintiff in error. The summons was dated December 31, 1908. Though an affidavit had been prepared for execution, as appears from the record, the proposed affidavit was neither signed nor sworn to by the plaintiff, nor was the jurat signed by any one. So that the account was not verified. Upon the call of the case in the justice's court at the first term, the defendant demurred to the suit, upon the ground that the account sued on was barred by the statute of limitations, as appeared upon the face of the account itself. The magistrate sustained this demurrer and dismissed the suit. Upon certiorari to the superior court this judgment was set aside and it was ordered that the case be tried. We think this was error, and that the certiorari should have been overruled and dismissed. The plaintiff's account as attached to the summons plainly shows that it was for indebtedness to a landlord. Starting with an undated "balance due from the account of 1903," the dates of the several items embraced in the account range from January 8, 1904, to November 21, 1904. The last item is a charge of $50 for the rent of two mules, dated November 21. The several items of the account aggregate $812.62. There is a credit for certain work in the month of April, which follows charges of cash items of the same date; and the last item of the account, to which we have referred, is followed by a credit for the crop of 1904 as a whole, amounting to $699.19. From the statement of the account it is apparent that the last item charged

would have become barred on November 21, 1908, unless, as insisted, there is something which would suspend the operation of the statute of limitations. It was insisted that the bar of the statute was suspended because it is the custom between landlords and croppers to settle at the end of each year. Whether this custom prevails or not, it does not appear from the face of the account; and certainly this custom does not supplant the law. It is a general principle that statues of limitations begin to run from the time that the right of action accrues. In the absence of a contract to the contrary, a landlord's right to collect his rent, as well as to collect for any supplies he may have furnished to aid in making the crop, arises upon the maturity of the crop. It would never do to hold that a landlord could not proceed to collect advances or rent until the end of the year; for if this were the case, the right of action would in most instances be absolutely worthless. It is a matter of common knowledge that the staple crops of this State mature before the end of the year; and the statement of this very account bears evidence of that fact, in the credit given the cropper for the crop which seems to have been sold to the landlord. The statement, too, of this credit causes the account upon its face to evidence that there had been a settlement of some kind between the plaintiff and the defendant prior to December 31, 1904, which would have given the plaintiff the right to commence an action for the unpaid balance even if he had not been a landlord. So far as the account shows upon its face, every item was barred by the statute of limitations when the suit was commenced on December 31, 1908; for there is nothing to indicate that the account was in any of those classes (referred to in section 2885 of the Civil Code of 1895) which, by custom, become due at the end of the year. Happily for the agricultural landlord, no custom postpones his right of action to collect what is due him either for rent or for supplies, after a sufficiency of the crop of the year is matured and gathered to pay the same. If custom is the result of universal understanding between landlords and croppers, and landlords and tenants, we would say that this was the custom of the country. The law fixes the landlord's special lien for rent on the crop by the date of the maturity of the crop. *Saulsbury* v. *McKeller,* 59 *Ga.* 302. See also *Thompson* v. *Commercial Guano Co.,* 93 *Ga.* 282 (20 S. E. 309), and *Golding* v. *Williamson,* 71 *Ga.* 89. Upon the face of the ac-

count it seems to have been an entire account between the parties, being the balance for the year 1903, and an itemized account for the year 1904; and consequently the statute began to run against it from the date of the last item in the account, November 21, 1904. This is said on the view that the plaintiff may not be a landlord. If, as is apparently the case, the plaintiff's account evidences the indebtedness of a cropper or a tenant to a landlord, then this account for supplies furnished by the landlord was due when the crop of 1904 was mature.　　The landlord has the benefit of summary foreclosure, and this remedy is applicable when the tenant fails to pay his rent, or disposes of any portion of the crop without paying the landlord for necessary advances.　　For this reason we think it plain that the statutory bar began to run when the plaintiff saw proper to convert his demand into an open account, by failure to use his statutory remedy of foreclosure.　　As the demurrer was properly sustainable under the ruling in *Colding* v. *Williamson*, supra, we think the court erred in sustaining the certiorari.　　The case is not affected by the provision of section 4130 of the Civil Code of 1895; because the record shows that the account was not verified by the affidavit.　　　　　　　　　　*Judgment reversed.*