NEW et al. v. DENISON CLAY CO.

(Circuit Court of Appeals, Eighth Circuit. July 7, 1919.)

No. 5187.

LIMITATION OF ACTIONS ⊕=24(2)—WRITTEN CONTRACTS—BILLS OF LADING.

Under the rule of law that the bill of lading required to be issued by the initial carrier upon an interstate shipment governs the entire transportation, and fixes the obligations of all participating carriers to the extent that its terms are applicable and valid, such a bill of lading obligating the owner to pay the freight, in connection with the filed and published tariffs, which become a part thereof, constitutes a written contract to pay the lawful freight as shown by such tariffs, and an action may be maintained thereon within five years, under Gen. St. Kan. 1915, § 6907(1).

Stone, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Action by Alexander New and Henry C. Ferris, receivers of the Missouri, Oklahoma & Gulf Railway Company, against the Denison Clay Company. Judgment for defendant, and plaintiffs bring error. Reversed.

Arthur Miller, of Kansas City, Mo., and Edward R. Jones and Ephraim H. Foster, both of Muskogee, Okl., for plaintiffs in error.

W. E. Ziegler, of Coffeyville, Kan., for defendant in error.

Before SANBORN and STONE, Circuit Judges, and TRIEBER, District Judge.

SANBORN, Circuit Judge. The plaintiffs in this action are the receivers of the railroad and property of the Missouri, Oklahoma & Gulf Railway Company. On August 20, 1917, they commenced an action against the Denison Clay Company, a corporation, for $561.04 of underpayments for the transportation of building tile and starters, over its line of railroad, from Rex, Okl., to Durant, Okl., between May 10 and August 1, 1914. The defendant demurred to the complaint of the plaintiffs, its demurrer was sustained, and the action was dismissed, on the ground that it was barred by the statute of limitations of the state of Kansas, where the causes of action arose and the action was brought. The plaintiffs complain of this ruling.

The complaint in the court below set forth, in nine counts, nine alleged causes of action for the recovery of undercharges of freight for the transportation. These counts differed only in the amounts

⊕=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

sought and the respective bills of lading, which were made parts of the respective counts and attached to the complaint. The averments of each count material to the question in this case were that the defendant delivered at Coffeyville, Kan., building tile and starters, to the Missouri Pacific Railway Company on a certain day in July or August, 1914, consigned over its railroad and over the railroad of the Missouri, Oklahoma & Gulf Railway Company, to Frier & Scott, at Durant, Okl.; that the Missouri Pacific Railway Company issued to the defendant a bill of lading for this shipment, a copy of which was attached to the complaint and made a part thereof; that the defendants were connecting and delivering carriers of the tile and starters; that they received them at Rex, Okl., and delivered them to Frier & Scott, at Durant, Okl., in July or August, 1914; that the freight charges for the transportation, which were specified by Southwestern Lines Tariff 44–H, I. C. C. 1042, on file with the Interstate Commerce Commission, were 20 cents per hundredweight, but that plaintiffs' agent collected only 10 cents per hundredweight; that this mistake resulted in an underpayment by the defendant of 10 cents per hundredweight on this shipment, which, with interest, the plaintiffs asked to recover.

By the bills of lading, made a part of the complaint, the Missouri Pacific Railway Company receipts for the tile and starters and "agrees to carry to its usual place of delivery at said destination, if on its road, otherwise to deliver to another carrier on the route to said destination," and the bills of lading contain stipulations that "the owner or consignee shall pay the freight and all other lawful charges accruing on said property, and, if required, shall pay the same before delivery." The bills of lading were signed by both the initial carrier and the consignor. The demurrer was general. It was that no count in the petition stated facts sufficient to entitle the plaintiffs to the relief they sought, and the court below sustained it on the ground that the causes of action stated in the complaint appeared to be barred by the statute of limitations of the state of Kansas, which provide that—

"Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:

"First. Within five years: An action upon any agreement, contract or promise in writing.

"Second. Within three years: An action upon contract, not in writing, express or implied; an action upon a liability created by statute, other than a forfeiture or penalty."

General Statutes Kansas 1915, § 6907.

The alleged causes of action accrued between July 1 and September 1, 1914, and this action was brought on October 20, 1917. There is no doubt, therefore, that the complaint fails to state a good cause of action upon a contract not in writing, express or implied, and upon a liability created by statute other than a forfeiture or penalty, because this action was not brought until more than three years after such causes of action, if any, accrued; and the only question in this

case is: Does the complaint state good causes of action upon contracts or promises in writing?

"The bill of lading required to be issued by the initial carrier upon an interstate shipment," says the Supreme Court, "governs the entire transportation and thus fixes the obligations of all participating carriers to the extent that the terms of the bill of lading are applicable and valid." Georgia, Fla. & Ala. Ry. v. Blish Company, 241 U. S. 190, 194, 195, 36 Sup. Ct. 541, 543 (60 L. Ed. 948).

The bills of lading in this action contain an agreement by the defendant to pay the freight; but they do not state the amount or the rate of the freight, and it is contended that here was a fatal defect in them as written contracts. But the rate of this freight was in writing or print and published, and was made certain beyond dispute, and beyond the power of the parties to the bill of lading to change it, by the tariff pleaded, and a mere multiplication of rate by weight would produce the amount. Interstate Commerce Commission Act as amended, United States Compiled Statutes 1916, §§ 8564–8569; Texas & Pacific Ry. Co. v. Mugg, 202 U. S. 242, 243, 245, 26 Sup. Ct. 628, 50 L. Ed. 1011; Armour Packing Co. v. United States, 153 Fed. 1, 18, 21, 82 C. C. A. 135, 14 L. R. A. (N. S.) 400; Armour Packing Co. v. United States, 209 U. S. 56, 81, 28 Sup. Ct. 428, 52 L. Ed. 681; New York, New Haven & Hartford v. Interstate Commerce Commission, 200 U. S. 361, 391, 398, 26 Sup. Ct. 272, 50 L. Ed. 515.

That is certain which can be made certain. The agreement to pay the freight contained in the bills of lading was therefore an agreement to pay the lawful freight, that freight prescribed by the applicable tariff filed and published under the acts of Congress, and that written or printed tariff, so far as it governed this freight, was, by this agreement to pay the freight, embodied in, and it became a part of, the contract in the bill of lading. Chicago, Rock Island & Pacific Ry. v. Cramer, 232 U. S. 490, 493, 34 Sup. Ct. 383, 58 L. Ed. 554.

Conceding, but not admitting, that, if the bills of lading had never been issued or pleaded, the other facts set forth in the complaint would, barring the statute of limitations, have presented tenable causes of action upon contracts not in writing, or on statutory liabilities, still that is no answer to the contention that the bills of lading constitute written contracts, from the breach of which causes of action for like recoveries might arise. The sale and delivery of an article of personal property for an agreed price, without writing, gives a good cause of action for the recovery of the price. If, however, the vendee also gives to the vendor his written agreement to pay the agreed price for the article, the breach of the written contract also presents a good cause of action, and one that under the statute of limitations of Kansas might survive two years after the former action was barred.

These bills of lading contained valid written contracts of the defendant to pay the lawful freight for the transportation involved in this action. The plaintiffs have carefully pleaded each of them and its breach in separate counts in their complaint, and have thereby set forth good causes of action that are not barred by the statute of

limitations of Kansas. Seaboard Air Line Ry. v. Luke, 19 Ga. App. 100, 90 S. E. 1041, 1042, 1043; South Georgia Ry. Co. v. South Georgia Grocery Co., 17 Ga. App. 349, 86 S. E. 939; Boatmen's Bank of St. Louis v. Fritzlen, 221 Fed. 145, 148, 137 C. C. A. 45; Moloney v. Cressler, 236 Fed. 636, 642, 149 C. C. A. 632.

Let the judgment below be reversed, and let the case be remanded to the court below, with directions to permit the defendant to answer and have further proceedings consistent with the views expressed in this opinion.

STONE, Circuit Judge (dissenting). A carrier is required by law to collect, and the shipper to pay, the tariff rate on interstate shipments. This mutual obligation of carrier and shipper cannot be affected by mistake, design, or even by positive contract to the contrary. It is a liability arising from and fixed by law, exists independent of contract, and attaches to the status of interstate carriage. It is a "liability created by statute" within the statute of limitations of Kansas. Although the above is true, the carrier and shipper may enter into a contract for interstate carriage, a portion of which is the payment of the legal freight rate. Where such contract exists, and the carrier has mistakenly collected less than that rate, it may sue for the difference, either under the contract or under the above "liability created by statute." In my judgment the carrier here based its action on the facts of interstate carriage and of collection of less than the tariff rate. The bills of lading appear only as exhibits to the petitions, and are merely incidental. The causes of action are practically identical in form, differing only as to those facts essential to identify different shipments. Such statement is convincing to my mind, and is, so far as here material, as to count 1, as follows:

"Further complaining of said defendant, the said plaintiffs allege that on July 7, 1914, the defendant Denison Clay Company delivered to the Missouri Pacific Railway Company at Coffeyville, Kansas, 3,333 hollow tile, loaded in Missouri Pacific car No. 20340, consigned over said Missouri Pacific Railroad and the line of railroad operated by the plaintiffs herein to Frier & Scott, at Durant, Oklahoma, and the bill of lading therefor was issued to the defendant, Denison Clay Company, by the Missouri Pacific Railway Company, a copy of which bill of lading is attached hereto, marked 'Exhibit A,' and made a part hereof; that the plaintiffs were connecting and delivering carriers of said car of tile, receiving the same at Rex, Oklahoma, and delivering the same to the consignee thereof at Durant, Oklahoma, on July 11, 1914; but that the agent of the plaintiffs did not collect from said consignee the proper and correct freight charges due for the transportation of said shipment, as provided by Southwestern Lines Tariff 44–H I. C. C. 1042, on file with the Interstate Commerce Commission, applying to the commodity transported by plaintiffs; that said agent applied a rate of ten cents ($.10) per hundredweight on hollow tile moving from Coffeyville to Durant, via the line of railroad operated by plaintiffs herein, when the rate that should have been applied in accordance with said tariff above referred to was twenty cents ($.20) per hundredweight; that by reason of said error in determining said freight charges there resulted an underpayment on the part of the said defendant amounting to $60.70, and that there is now due and owing said plaintiffs by reason of said transportation the sum of $60.70, togther with interest thereon from the 11th day of July, 1914, at the rate of 6 per cent. per annum.

"Plaintiffs further state that said charges above referred to were earned and have been assessed in strict conformity with and under the lawfully established tariffs covering the rate to be charged for the transportation of this shipment in effect and on file at the time.

"Plaintiffs allege that they have made demand upon the defendant for the payment of said sum of $60.70, but defendant has failed and refused to pay the same and still fails and refuses to make payment thereof; that said charges are reasonable, just and properly assessed, and are now and have been due said plaintiff from said defendant for a long time, and that the same should be paid by the defendant herein."